689 F.2d 612
 1982-2 Trade Cases 64,952
 James GAMBREL, Consumer Association of Kentucky, Inc.,
Citizens for Denturism in Kentucky, Inc., Harold Ray Druin,
James Renfro, Sr., James Renfro, Jr., Dan Hauner, James
Gambrel, Chester Hudson, Plaintiffs-Appellants,
v.
The KENTUCKY BOARD OF DENTISTRY, James W. Holliday, D.M.D.,
Harold Bradform, D.M.D., James M. Smith, Jr., D.M.D., O.
Harlan Wilson, D.M.D., Howard Titsworth, D.M.D., Paul Webb,
D.M.D., John Hoyle, Steven L. Beshear as Successor to Robert
Stephens, Attorney General Pursuant to KRS 418.075, Lewis
Whipple, D.M.D., Douglas Kennedy, D.M.D., Gordon King,
D.M.D., William Willis, D.M.D., Glenn M. Barnes, D.M.D., The
Kentucky Dental Association, Defendants-Appellees.
 No. 80-3336.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 10, 1981.
Decided Sept. 24, 1982.
Rehearing and Rehearing En Banc Denied Nov. 16, 1982.
 
 Franklin S. Yudkin (argued), Belker & Yudkin, Louisville, Ky., for plaintiffs-appellants.
 John T. Ballantine (argued), John T. Fowler (argued), Louisville, Ky., for defendants-appellees.
 Lloyd A. Thomas, Louisville, Ky., for Ky. Bd. of Dentistry.
 James B. Murphy, Louisville, Ky., for King, D.M.D.
 Before LIVELY and ENGEL, Circuit Judges, and FEIKENS,* District judge.
 ENGEL, Circuit Judge.
 
 
 1
 This appeal requires us to decide whether certain private conduct by several Kentucky dentists, and the enforcement activities of the Kentucky Board of Dentistry, challenged by the plaintiffs as violative of federal antitrust laws, are compelled by Kentucky's statutory scheme of regulation of the practice of dentistry, and therefore exempt from the antitrust laws under the "state action" doctrine of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and its progeny.
 
 
 2
 * On May 16, 1978, a complaint was filed by James Gambrel, a dental technician, by two consumer groups, and by one consumer of dentures against the Kentucky Board of Dentistry, the Attorney General of Kentucky, and five private dentists. An amendment to the complaint added as plaintiffs five other dental technicians, and as defendants the Kentucky Dental Association, the United States Justice Department, the United States District Attorney, and two members of the Federal Trade Commission. As amended, the complaint alleged that the Kentucky Board of Dentistry violated Gambrel's First Amendment rights by effectively prohibiting his commercial speech and right to advertise, and challenged the constitutionality of Ky. Rev. Stat. § 313.247, which governs the practice of dentistry in Kentucky. The complaint also alleged that the Board of Dentistry, the Kentucky Dental Association, and the individual defendant dentists all conspired to monopolize the denture market in Kentucky, restrain trade, and boycott the plaintiff dental technicians, all in violation of sections 1 and 2 of the Sherman Antitrust Act. 15 U.S.C. §§ 1, 2.
 
 
 3
 In a memorandum opinion filed April 7, 1980, Chief United States District Judge Charles M. Allen concluded that the amended complaint failed to state a cause of action under the antitrust laws because the private actions complained of are commanded by state law and, hence, within the antitrust exemption of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and subsequent case law. Judge Allen further concluded that the Kentucky statute regulating the practice of dentistry plainly is a valid exercise of the police power of the state to protect the health and welfare of its citizens and does not violate any constitutional rights of the plaintiffs under the Fourteenth Amendment. Judge Allen further held that the specific statutory restriction on the rights of the plaintiff dental technicians to advertise to the general public, contained in Ky. Rev. Stat. §§ 313.010(2) and 313.020, does not violate the First Amendment rights of the plaintiffs because Ky. Rev. Stat. § 313.010(2) validly permits the plaintiffs to sell their denture products and services only to licensed dentists, and not to the general public.
 
 
 4
 Although there is a suggestion in plaintiffs' brief of some dissatisfaction with the trial court's findings with respect to the alleged First Amendment violation, the plaintiffs' appeal abandons the constitutional attack upon the Kentucky statute and confines itself to the antitrust claims. Plaintiffs' primary antitrust claim has been that the defendant dentists, relying upon the Kentucky statute, have refused to give denture prescriptions and dental laboratory work orders directly to patients so that they may thereafter seek the dental laboratory of their choice; instead, the dentists insist on sending denture orders directly to the laboratory of their choosing.[1]
 
 
 5
 On appeal, plaintiffs insist that this private conduct is not shielded by the antitrust immunity judicially created under Parker v. Brown, supra. We reject this and other arguments of the plaintiffs and affirm the judgment of the district court.
 
 II
 
 6
 Our Parker v. Brown analysis requires that we first describe the Kentucky statutory scheme in some detail, as well as the role of the dental technician in that scheme.
 
 
 7
 Chapter 313 of the Kentucky Revised Statutes defines and regulates the practice of dentistry in Kentucky. It provides that "(n)o person, except those licensed and registered under prior laws of this state, shall practice or attempt to practice dentistry unless he has been licensed by the board (of Dentistry) and has registered his license as provided in K.R.S. 313.110." Ky. Rev. Stat. § 310.020. The act of practicing dentistry is broadly defined, and includes the construction, sale, and advertising of dentures by any person to anyone other than a licensed dentist. Section 313.010(2) provides:
 
 
 8
 Any person shall be regarded as "practicing dentistry" who, for a fee, salary or other reward paid, or to be paid either to himself, or to another person, performs or advertises to perform, dental operations of any kind, or who diagnoses or treats diseases or lesions of human teeth or jaws, or attempts to correct malpositions thereof, or who diagnoses or treats disorders, or deficiencies of the oral cavity and adjacent associated structures, or who takes impressions of the human teeth or jaws to be used directly in the fabrication of any intraoral appliance, or shall construct, supply, reproduce or repair any prosthetic denture, bridge, artificial restoration, appliance or other structure to be used or worn as a substitute for natural teeth except upon the written laboratory procedure work order of a licensed dentist and constructed upon or by the use of casts or models made from an impression taken by a licensed dentist, or who shall advertise, offer, sell or deliver any such substitute or the services rendered in the construction, reproduction, supply or repair thereof to any person other than a licensed dentist, or who places or adjusts such substitute in the oral cavity of another, or who uses the words "dentist," "dental surgeon," the letters "D.D.S.," "D.M.D.," or other letters or title in connection with his name, which in any way represents him as being engaged in the practice of dentistry.
 
 
 9
 (emphasis added).
 
 
 10
 The determination of the qualifications for licensing of dentists and others made subject to the statute's regulation of the practice of dentistry is vested by Chapter 313 in a Board of Dentistry consisting of seven members appointed by the Governor, six from a list of names recommended by the resident licensed dentists of Kentucky at an annual election supervised by the Board, and the seventh a citizen at large not associated with or financially interested in the practice of dentistry. The term of office and method of filling the vacancies and the remuneration for Board members are carefully set forth by statute. See Ky. Rev. Stat. § 313.200. Sections 313.210 and .220 set forth the powers and duties of the Board of Dentistry. Thus, under section 313.220(1):
 
 
 11
 The board shall administer this chapter. It may make regulations for its own conduct and procedure, and provide for affiliation with the American Association of Dental Examiners. It may select the subjects and the standard of proficiency and percentage for examinations to practice dentistry, and it shall conduct the examination of all applicants for a license under provisions of this chapter.
 
 Section 313.220(4) provides:
 
 12
 The board may, subject to the provisions of this chapter, regulate the practice of dentistry and the use of dental auxiliary personnel in this state.
 
 
 13
 Section 313.220(5) gives the Board broad investigatory powers:
 
 
 14
 The board may employ such assistants, inspectors, investigators, clerks, and other persons as it deems necessary to enforce this chapter. It may authorize any of such employees to make investigations and report to the board with respect to any violation of any of the provisions of this chapter or any regulation or order of the board, to inspect any dental office or place where dental operations are performed and to deliver or transmit to any holder of a license under this chapter any order of the board with respect to the licensee's performance of his work under the authority of such license. If any holder of a license under this chapter fails or refuses to admit any such representative of the board for the purpose of making any such examination or inspection or if any holder of any such license fails or refuses to comply with any order or direction of the board, such failure or refusal shall be reported to the board for whatever disciplinary action it deems appropriate, including revocation of any license if such failure or refusal is deemed by the board to be material.
 
 
 15
 Section 313.360 specifically authorizes the Kentucky Board of Dentistry to maintain actions in equity to enjoin the practice of dentistry without a license, providing for a summary trial and punishment of offenders. Section 313.990 provides extensive criminal penalties for violation of the Act. Section 313.990(1) provides that violators shall receive a fine of $1,000.00 or imprisonment of not more than 30 days for the first offense and for each subsequent offense a fine of $2,000.00 or imprisonment for not more than 60 days, or both. Each day that the violator is without a license and practices or attempts to practice dentistry is to constitute a separate offense. Other stringent restrictions and penalties are imposed for violation of the Act.
 
 
 16
 Finally, the statute governs and limits the use and operation of a dental laboratory. Under section 313.010(4), "dental laboratory" includes:
 
 
 17
 any person, firm or corporation other than a licensed dentist, who directly or through an agent or employe, by any means or method, in any way supplies or manufactures artificial substitutes for the natural teeth, other than those unfinished substitutes normally available through dental supply houses, or who furnishes, supplies, constructs or reproduces or repairs any prosthetic denture, bridge or appliance to be worn in the human mouth or who performs or offers or undertakes to perform or accomplish dental laboratory technology.
 
 
 18
 Section 313.010(5) defines "dental laboratory technician" to mean: "any individual who performs or offers or undertakes to perform or accomplish dental laboratory technology and who is classified as such by regulations of the board adopted as provided by this chapter." It is the regulation of dental laboratories and dental laboratory technicians and the limitations placed upon them by the statutory scheme which is the particular focus of plaintiffs' antitrust litigation in this appeal.
 
 III
 
 19
 (A)
 
 
 20
 The plaintiffs' case centers on Ky. Rev. Stat. sections 313.247(1) and 313.010(2). Section 313.247 provides in relevant part:
 
 
 21
 (1) No dentist shall use the services of any person not licensed to practice dentistry in this state to construct, alter, repair or duplicate any denture, plate, bridge, splint, orthodontic or prosthetic appliance, without first furnishing such unlicensed person a written laboratory procedure work order on forms prescribed by the board. Such unlicensed person shall retain the original laboratory procedure work order, and the dentist shall retain a duplicate copy, for two (2) years from the date thereof. All such laboratory procedure work orders required by this subsection shall be open for inspection by the board.
 
 
 22
 (emphasis added). Section 313.010(2), quoted in full above, prohibits dental laboratories from advertising, offering, or selling their services to anyone other than a licensed dentist.
 
 
 23
 At the heart of the plaintiffs' antitrust complaint is the construction of the foregoing statutes by the Board of Dentistry as forbidding dentists from providing prescriptions for dentures directly to consumers for delivery to the laboratory of their choice as contrasted to the dentist's choice. Plaintiffs allege that this construction of the statute by the Board has guided its enforcement activities against the plaintiffs as well as most of the private actions of the defendant dentists complained of under the Sherman Act. See Complaint at PP 4, 6, 24. The defendants rely on this construction of the statute to claim antitrust exemption under Parker v. Brown, supra, a construction disputed by the plaintiffs. We turn now to the exemption issue.
 
 
 24
 (B)
 
 
 25
 In Parker v. Brown, supra, the Supreme Court dealt with a statutory and regulatory scheme in which agricultural cooperatives were organized directly by the State of California for the purpose of restricting competition among the growers of agricultural commodities produced in that state, in order to maintain prices in the distribution of those commodities to packers. Specifically involved in Parker v. Brown was a seasonal pro-ration marketing program for raisins, a program which prevented the plaintiffs there from freely marketing their 1940 crop. The marketing restrictions, it was asserted, were in restraint of trade contrary to the provisions of the Sherman Act. In upholding the California statutory plan, the Supreme Court assumed that the program would violate the Sherman Act if organized and made effective solely by virtue of a contract, combination or conspiracy of private persons. However, the Court found that the program derived its authority and efficacy from the legislative command of the state, and that the antitrust laws were not intended by Congress to interfere with the sovereign powers of the states:
 
 
 26
 We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.
 
 
 27
 317 U.S. at 350-51.
 
 
 28
 The Supreme Court has since confirmed the continuing force of Parker v. Brown in a number of circumstances, most recently in Community Communications Co. v. City of Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). See also New Motor Vehicle Board of California v. Orrin W. Fox Co., 439 U.S. 96, 109-11, 99 S.Ct. 403, 411-12, 58 L.Ed.2d 361 (1978); City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). In Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Court held that schedules for minimum fees established by a county bar association and enforced by the Virginia State Bar Association were not exempt from antitrust scrutiny because the schedules were not required by the State of Virginia itself. It is not enough, held the Court, that private anti-competitive conduct is " 'prompted' by the state action; rather, anti-competitive activities must be compelled by direction of the State acting as a sovereign." 421 U.S. at 791, 95 S.Ct. at 2015.
 
 
 29
 The following year the Supreme Court decided Cantor v. Detroit Edison Co., 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976). Of the cases we have examined, Cantor can fairly be said to be the most unanticipated in the light of preexisting authority in this area. In Cantor, the defendant electric utility company had historically distributed light bulbs to its residential customers without additional charge and had included the cost of the bulbs in its utility rates, rates which were fully regulated by the state. The plaintiff in Cantor, a retailer, brought suit claiming that the utility was using its monopoly power over the distribution of electricity for the purpose of restraining competition in the sale of bulbs. Our circuit affirmed a decision of Judge Feikens reported at 392 F.Supp. 1110 (E.D. Mich. 1974) holding, in reliance upon Parker v. Brown, that the promulgation of the rate came within the antitrust exemption where it appeared that after conducting its own investigation and hearing, the Michigan Public Service Commission had specifically approved the tariff and by its action made it mandatory for residential subscribers. 513 F.2d 630 (6th Cir. 1975). The Supreme Court disagreed. In an opinion by Justice Stevens, the Court emphasized that the State of Michigan itself was neutral on the question whether a utility should or should not have a light bulb distribution program and, hence, that the approval of the privately promulgated tariffs which included such a plan did not exempt Detroit Edison under Parker v. Brown:
 
 
 30
 The distribution of electric light bulbs in Michigan is unregulated. The statute creating the Commission contains no direct reference to light bulbs. Nor, as far as we have been advised, does any other Michigan statute authorize the regulation of that business. Neither the Michigan Legislature, nor the Commission, has ever made any specific investigation of the desirability of a lamp-exchange program or of its possible effect on competition in the light-bulb market. Other utilities regulated by the Michigan Public Service Commission do not follow the practice of providing bulbs to their customers at no additional charge. The Commission's approval of respondent's decision to maintain such a program does not, therefore, implement any statewide policy relating to light bulbs. We infer that the State's policy is neutral on the question whether a utility should, or should not, have such a program.
 
 
 31
 Cantor v. Detroit Edison Co., supra, 428 U.S. at 584-85, 96 S.Ct. at 3114-15 (emphasis added).
 
 
 32
 Later, however, as if to illustrate the type of distinctions it had desired to make in Goldfarb and Cantor, the Supreme Court in Bates v. State Bar of Arizona, 433 U.S. 350, 359-63, 97 S.Ct. 2691, 2696-2698, 53 L.Ed.2d 810 (1977), held exempt from the antitrust laws certain disciplinary rules promulgated by the Arizona State Supreme Court which prohibited attorneys from advertising in newspapers and other media. The defendants were licensed attorneys subject to complaints filed with the State Bar. Although they ultimately prevailed in the United States Supreme Court on their First Amendment challenge to the advertising ban, 433 U.S. at 363-84, 97 S.Ct. at 2698-09, the Court rejected their antitrust challenge to the enforcement of the advertising rules. It found that the rulemaking by the State Supreme Court constituted "state action" because the state constitution gave that body the ultimate power to regulate the practice of law. 433 U.S. at 359-60, 97 S.Ct. at 2696-97.
 
 
 33
 Finally, in California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Supreme Court gathered together all of the preexisting decisions to articulate two requirements for antitrust immunity under Parker v. Brown: "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." 445 U.S. at 105, 100 S.Ct. at 943.
 
 
 34
 In Midcal Aluminum, the court was faced with a California statute under which all wine producers, wholesalers and rectifiers were required to file fair trade contracts or price schedules with the state. If a wine producer had not yet set prices through such a fair trade contract, wholesalers nonetheless were required to post a resale price schedule for that producer's brand. Under the statutory scheme, no state-licensed wine merchant could sell wine to a retailer other than at the price set "either in an effective price schedule or in an effective fair trade contract ...." Holding that the plan in question violated the Sherman Act as illegally restraining trade through resale price maintenance, the Supreme Court found that the scheme was "essentially a private price-fixing arrangement", 445 U.S. at 106, 100 S.Ct. at 943, not protected by the Parker v. Brown exemption. In so ruling, the Court held that the state did not "actively supervise" the resale pricing policy, and made pointed reference to the admonition of Parker v. Brown that " 'a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful ....' 317 U.S., at 351 (63 S.Ct. at 313)," Id.
 
 
 35
 (C)
 
 
 36
 While Midcal Aluminum does in truth contain language which appears to be restrictive of the broader implications of Parker v. Brown, we conclude that a logical construction of all of the foregoing cases supports the conclusion of the district judge that both the enforcement by the Kentucky Board of Dentistry of the Kentucky statutory scheme of regulation of dentists, dental technicians, and dental laboratories and the actions of the defendant dentists come well within the exemption of Parker v. Brown.
 
 
 37
 We believe that the critical distinction between the facts here and those in Cantor and Midcal Aluminum is that here the conduct of the defendants emanates directly from the mandate of state law in a well-developed and long-established statutory scheme. It is not left to the private sector to decide what the policy is or whether it is to be complied with.[2] The two specific standards for antitrust immunity articulated in Midcal Aluminum are met. As we discuss below, the challenged restraint upon the dentists is clearly articulated in the extensive statutory scheme described above, and the policy is one which is actively supervised by the state.
 
 
 38
 The private conduct alleged to violate the antitrust laws here is the defendant dentists' refusal to hand the denture work order or prescription over to the patient so that the patient may shop around and employ the dental laboratory of his choice. Rather, the dentists send the prescriptions and orders for denture work directly to the laboratory of their choosing. Plaintiffs allege, and it appears undisputed, that the Board of Dentistry's enforcement of the Kentucky statute is based on its interpretation of the statute as prohibiting dentists from giving denture work orders directly to the patient, and that the defendant dentists have refused to give the work orders to the patients because they believe to do so would violate the Kentucky statute. Complaint at PP 4, 6.
 
 
 39
 The plaintiffs argue, at least inferentially, that antitrust exemption must be denied because the statute does not explicitly state that a dentist may not hand his work order over to the patient. We are unaware of any decisions by the courts of Kentucky which either accept or reject the Board of Dentistry's interpretation of the statute. In the absence of such judicial interpretation, we place great persuasive weight on the interpretation of the statute by the administrative body charged with enforcing it. Cf. Sound, Inc. v. A.T. & T., 631 F.2d 1324, 1334 (8th Cir. 1980) (one of the factors to be considered under Midcal Aluminum is "the nature of the regulatory agency's interpretation and application of its enabling statute, including the accommodation of competition by the regulator"); Health Care Equalization Comm. v. Iowa Medical Soc'y, 501 F.Supp. 970, 989, 991 (S.D. Iowa 1980). Indeed, we believe the Board of Dentistry's interpretation of the statute is clearly correct. Accordingly, we hold that the dentists' challenged conduct is compelled by the statute itself and therefore exempt under the antitrust laws.[3]
 
 
 40
 The language of the statute strongly implies that the dentist and dental technician are to deal directly with each other, without any patient involvement. Ky. Rev. Stat. § 313.247 provides that "(n)o dentist shall use the services of any person not licensed to practice dentistry in this state to construct, alter, repair or duplicate any denture ... without first furnishing such unlicensed person a written laboratory procedure work order on forms prescribed by the board." (emphasis added). Ky. Rev. Stat. § 313.010(2), in turn, makes it illegal for any dental technician to "advertise, offer, sell or deliver" any denture work "to any person other than a licensed dentist". We believe this language clearly articulates a state policy that dental technicians have contact with and sell to the dentist only and not to the public at large,[4] and that it is the dentist's responsibility to deliver his work orders to the dental technician he chooses.[5]
 
 
 41
 As the district court found, the statutory provisions just described, by permitting dental technicians to deal only with licensed dentists, evidence a legislative policy placing the responsibility for the treatment and fitting of patients for dentures exclusively upon the licensed dentist, and thereby vests the dentist with the "right and, in fact, the duty to select whatever dental technician he believes to be qualified to fill the prescription for dentures." District Court Opinion at 6.[6]
 
 
 42
 There appears to be no dispute that the state of Kentucky "actively supervises" the statutory policy, thus meeting the second requirement of Midcal Aluminum. First, the policy emanates directly from the language of a state statute and not from any agreements by private individuals as in Midcal Aluminum. Secondly, the powers of enforcement are expressly conferred upon the Board of Dentistry, and it appears that historically the Board has indeed acted to uphold and enforce the regulatory scheme. In fact, the enforcement of the statute by the Board against plaintiff Gambrel and others has been one of the impelling reasons for the commencement of this action. See, e.g., Renfro v. Kentucky Board of Dentistry, No. 81-CA-1151-MR (Ky. Ct. App. Dec. 18, 1981).
 
 IV
 
 43
 In addition to the defendant dentists' refusal to give denture work orders to their patients, plaintiffs' complaint contains other general antitrust allegations: a conspiracy by the defendants to monopolize the denture market in Kentucky and a conspiracy to boycott the plaintiff dental laboratories with the intent to drive them out of business. Defendants include individual members of the Kentucky Board of Dentistry, individual officers of the Kentucky Dental Association, and certain dentists who may or may not have connections to either one of those two groups. The complaint, however, fails to allege any facts from which a violation of the antitrust laws can be inferred on the part of any particular defendants. The only facts alleged are that the individual dentists were approached by private citizens and, upon being asked for work orders for dentures which might then be delivered to plaintiffs' laboratories or other laboratories of the patient's choice, refused. That is all. More than two years of discovery have revealed no more.
 
 
 44
 Our examination of the pleadings and the proofs in this action satisfies us that plaintiffs can show no more than a valid and extensive state regulatory scheme and obedience by private persons to the mandates of the statutes. Although the plaintiffs do introduce proof concerning the efforts of the defendants to lobby in the state legislature against any proposed changes in the law and to encourage the Board of Dentistry to enforce the state law, this activity is as much entitled to First Amendment protection as are the efforts of the plaintiffs themselves to seek legislative changes in what they conceive to be an inappropriate statutory scheme which is harmful to them and to the consuming public. Such activity is not prohibited by the Sherman Act. Eastern RR. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 135-39, 81 S.Ct. 523, 528-530, 5 L.Ed.2d 464 (1961); see California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-11, 92 S.Ct. 609, 611-12, 30 L.Ed.2d 642 (1972); United Mine Workers v. Pennington, 381 U.S. 657, 669-70, 85 S.Ct. 1585, 1592-93, 14 L.Ed.2d 626 (1965).
 
 
 45
 We are alert to the dangers of employing summary judgment procedures in complex litigation such as antitrust actions. The court's action here, however, was far from precipitate. Plaintiffs had the benefit of extensive pretrial discovery proceedings covering a period of more than two years. Full and ample notice had been given pursuant to Fed. R. Civ. P. 12, that defendants' motion to dismiss would be treated as a motion for summary judgment under Fed. R. Civ. P. 56. Nevertheless, the plaintiffs have been wholly unable to articulate any case of private actionable conspiracy under the antitrust laws.[7]
 
 V
 
 46
 As California Liquor Dealers v. Midcal Aluminum, supra has made clear, the Parker v. Brown exemption does not permit states to give a blank check to private individuals to engage in conspiracies in violation of the nation's antitrust laws. We do not doubt that in a proper case and upon proper pleadings and proof, dentists can be as guilty as anyone else of conduct which is unlawful under the Sherman Act. When such conduct does arise, the plaintiffs remain free to invoke the jurisdiction of the Federal courts under the antitrust laws. Because no antitrust case is made out here, the trial judge did not err in granting summary judgment.
 
 
 47
 AFFIRMED.
 
 
 48
 FEIKENS, District Judge, dissenting.
 
 
 49
 In this case the Court holds that the challenged restraint upon Kentucky dentists is clearly articulated in the statutory scheme and the policy is one which is actively supervised by the State. While the Court correctly reads California Retail Liquor Dealers to articulate two requirements for antitrust immunity under Parker v. Brown:
 
 
 50
 "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." 445 U.S. at 105, 100 S.Ct. at 943,
 
 
 51
 the court runs these two requirements together and concludes that if the policy is clearly articulated in a statute that establishes standards of conduct, then it is also actively supervised. I do not read California Retail Liquor Dealers in this way. It does not do justice to the cardinal point that the test includes two parts. Under that interpretation, and keeping some distinction between the parts, having fulfilled the first part by adopting a policy, the State must still fulfill the second part by producing standards of conduct. Yet whenever the State fulfills the second, it has also fulfilled the first. The first part is thus redundant. I believe the Supreme Court meant more: the state must not only clearly articulate its policy in legislation specifying standards of conduct, it must also actively supervise the policy by actively enforcing the legislation. Because the record in this case does not reflect that the State has enforced its policy, I cannot agree with the majority.
 
 
 52
 I would vacate the District Court's Order of Summary Judgment and remand the case for a hearing in which the State would have to show that it has seriously undertaken the enforcement of its anti-competitive statute. Absent a record, it can as easily be asserted that it is the Kentucky Dental Association and not the statutory Board of Dentistry which carries out this regulatory scheme. If that factual conclusion is made, we would have a situation here to which Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) would apply. To quote Goldfarb:
 
 
 53
 It is not enough that private anti-competitive conduct is 'prompted' by the state action; rather, anti-competitive activities must be compelled by direction of the State acting as a sovereign. 421 U.S. at 791, 95 S.Ct. at 2015.
 
 
 54
 As I read the development and the source of the state action doctrine, announced in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942), a state must not only show that it has adopted particular standards of conduct and that the legislation entrusts enforcement to a state agency, the state must also show that it has seriously undertaken the enforcement of the statute. Anything less and the fundamental federal policy of free competition "is being unnecessarily and inappropriately subordinated to state policy ...." Bates v. State Bar of Arizona, 433 U.S. 350, 362, 97 S.Ct. 2691, 2698, 53 L.Ed.2d 810 (1976).
 
 
 55
 The state action exemption, like many other doctrines in many areas of our jurisprudence, is the product of a close balancing of competing legitimate interests. In this case, a balance between the federal policy of free competition and our fundamental principles of federalism which leaves to strong independent states the power to deal with peculiar local problems. As the Supreme Court stated in Parker v. Brown, supra, 317 U.S. at 351, 63 S.Ct. at 313, "In a dual system of government in which, under the constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." The Court speaks of the intention of Congress, but its finding is based on a presumption that results from the careful balance already described. Bates v. State Bar of Arizona, supra, 433 U.S. at 362, 97 S.Ct. at 2698 (quoted above).
 
 
 56
 The balance presumes, of course, that a state does more than merely "authoriz(e), approv(e), encourag(e), or participat(e), in restrictive private conduct." Cantor v. Detroit Edison Co., 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1975). The state "as sovereign" must demonstrate the seriousness of its intentions by, first, clearly articulating and affirmatively expressing the restraint as state policy, and, second, actively supervising the implementation of the policy. California Liquor Dealers v. Midcal Aluminum, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1979). Active supervision of the policy in this context must include active enforcement. Without enforcement, the state is throwing into the balance a hollow husk.
 
 
 57
 The Supreme Court has repeatedly reiterated the necessity of enforcement. In Parker, 317 U.S. at 352, 63 S.Ct. at 314, the Court stressed in upholding the California program that "it is the state, acting through the Commission which adopts the program and which enforces it with penal sanctions, in the execution of a governmental policy." (Emphasis added). Similarly, in Bates, 433 U.S. at 362, 97 S.Ct. at 2698, the Court concluded, "we deem it significant that the state policy is so clearly and affirmatively expressed and that the State's supervision is so active." And in California Liquor Dealers, 445 U.S. at 100, fn. 2, 100 S.Ct. at 940 fn. 2, the Court in striking down California's wine pricing scheme noted that wine dealers who were covered by the regulation "also may be subject to private damage suits for unfair competition."
 
 
 58
 The wisdom of requiring a state to enforce its anti-competitive restraints is further evidenced when one considers the possible consequences of failing to enforce. A statute left unenforced by the state is an easy tool for protected groups to use illicitly in further securing hegemony over the market-most likely to the disadvantage of the consumers the legislation was meant to protect. The present case offers a possible illustration. While the prohibition on dealings between dental patients and dental technicians was undoubtedly intended to insure that denture wearers receive proper professional adjustment, it also gives dentists the opportunity to mark up the cost of a denture and to charge for an additional office visit. Dentists have an economic stake in the statute. Unenforced, the private dental association is free to wield the statute discriminatively, perhaps only against those technicians who seek through lobbying or public advertising to change the statute. More elaborate and efficient legislation could thus be thwarted.
 
 
 59
 The private organization might also enforce the law only against technicians who advertise their services and prices even if they add that they are available only through the patient's dentist. This sort of advertising is presumably proper and competitive but it could be eliminated.* Unlike the scheme approved in Bates where the State Bar Association enforced the restraints under the close eye of the State Supreme Court, the role of the private Kentucky Dental Association is not "completely defined by the court" nor does it "act as the agent of the court under its continuous supervision." Bates, supra, 433 U.S. at 361, 97 S.Ct. at 2697. If it leaves enforcement to the private professional organization, the State of Kentucky is doing no more than "casting a gauzy cloak of state involvement over what is essentially a private ... arrangement." California Liquor Dealers, supra, 445 at 106, 100 S.Ct. at 943. As Parker established and the Court has repeated through the years, "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful ...." Id., 371 U.S. at 351, 63 S.Ct. at 313.
 
 
 60
 A hearing would close the gap created by the Court. If the evidence shows that the State has seriously undertaken enforcement, then the Parker doctrine applies. If not, it does not.
 
 
 
 *
 Hon. John Feikens, Chief Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The plaintiffs' appeal brief begins as follows:
 "The Appellant's case is, as simply stated:
 A. Can the appellees (defendants) continue to prohibit patients from being given the denture prescription/work order so that the patient can select the denture laboratory of their choice to fill the prescription?
 B. Are the Appellants (plaintiffs) entitled to damages for the detriment to them under the current interpretation of the statute by the Appellees?"
 Brief of Appellant at 6.
 
 
 [2]
 The Supreme Court distinguished Cantor in Bates v. State Bar of Arizona, supra, on several grounds equally applicable here. First, the Court noted that Cantor did not deal with an antitrust claim against a public agency charged with enforcing state law:
 First, and most obviously, Cantor would have been an entirely different case if the claim had been directed against a public official or public agency, rather than against a private party. Here, the appellants' claims are against the State. The Arizona Supreme Court is the real party in interest; it adopted the rules, and it is the ultimate trier of fact and law in the enforcement process. Although the State Bar plays a part in the enforcement of the rules, its role is completely defined by the court; the appellee acts as the agent of the court under its continuous supervision.
 433 U.S. at 361, 97 S.Ct. at 2697 (footnote and citation omitted). This distinguishes Cantor from the plaintiffs' claim in this case against the Kentucky Board of Dentistry and its members. The Board of Dentistry is a public agency and its members are public officials. As we discuss later, the Kentucky legislature has by statute created the challenged restraint. Furthermore, as our description of the Kentucky statutory scheme has revealed, the Board of Dentistry "acts as the agent" of the state in enforcing the restraint, and the courts of Kentucky are "the ultimate trier(s) of fact and law in the enforcement process." Just as in Bates, then, "the appellants' claims are against the State."
 Similarly, Cantor does not apply to plaintiffs' claim against the individual dentists. As Bates emphasized, Cantor involved a restraint of trade which was "instigated by (a private) utility with only the acquiescence of the state regulatory commission," 433 U.S. at 362, 97 S.Ct. at 2698, and in Cantor "the State had no independent regulatory interest in the market" affected by the private restraint. Id. at 361, 97 S.Ct. at 2697. By contrast, the Kentucky legislature instigated the restraint challenged here, and Kentucky's regulatory interest in the production and proper fitting of dentures is longstanding and "at the core of the State's power to protect the public", id., or, as the district court put it, "a matter which is of vital interest to the health and safety of (Kentucky's) citizens." District Court Op. at 4.
 
 
 [3]
 Because we believe the meaning of the statute in this case is clear and unambiguous, we need not decide a more subtle question, namely whether the interpretation of an ambiguous or open-ended regulatory statute by a state agency can ever constitute "state action" in and of itself under the Parker v. Brown doctrine. Certainly the first part of the Midcal Aluminum test, whether the challenged restraint is "clearly articulated and affirmatively expressed as state policy", at a minimum covers state policy explicitly declared in a statute. However, state regulatory statutes are often drafted in general terms and delegate broad policymaking discretion to a state regulatory agency. The result is administrative policymaking, either by authorized rulemaking or by enforcement practices. The Supreme Court has not decided whether and under what circumstances state policy which is first articulated and expressed by a state administrative agency satisfies the first part of the Midcal Aluminum test. We need not reach this question, since the specific policy at issue in this case is clearly expressed in the state statute itself. We note, however, that the Eighth Circuit has held that one of the factors to be considered under Midcal Aluminum is "the nature of the regulatory agency's interpretation and application of its enabling statute, including the accommodation of competition by the regulator". Sound, Inc. v. A.T. & T., supra, 631 F.2d at 1334; see Health Care Equalization Comm. v. Iowa Medical Soc'y, supra, 501 F.Supp. at 989, 991
 
 
 [4]
 Plaintiffs' counsel received an opinion to this effect from the Kentucky Attorney General in 1977:
 (W)e are of the opinion that a dental laboratory may not advertise, offer, sell or deliver dental devices or the services rendered in the construction, reproduction, supply or repair thereof to any person other than a licensed dentist. Such action will constitute the practice of dentistry, KRS 313.010(2).
 Attorney General of Kentucky, Op. Att'y Gen. 77-226 (March 29, 1977).
 
 
 [5]
 Supportive of this interpretation is an ethical opinion issued by the Kentucky Dental Association and published in its 1976 Journal:
 The dental laws of the state place definite limits on the performance of auxiliary personnel in the dental office ...
 The laboratory technician plays an important role in the modern dental practice. It is important that the dentist protect the correct relationships as outlined in the Code of Ethics.
 The patient should never directly contact the technician without being in the presence of the dentist. A prime example of this is the prosthetic repair.
 The dentist should never send the patient to a laboratory for this work. It is up to the dentist to determine what is necessary to be done and delegate this work to the technician by prescription ....
 
 
 [6]
 The plaintiffs point out that Kentucky gives statutory authority to dentists to give drug prescriptions directly to patients to be filled out by any druggist of their choice, Ky. Rev. Stat. § 313.250(1); that Ky. Rev. Stat. § 320.300 permits optometrists to give prescriptions to the consumer to be filled out by any optical retailer; and that Ky. Rev. Stat. §§ 218A.010(16) and 218A.180 authorize the dispensing of controlled substances by physicians, dentists, podiatrists, veterinarians, or scientific investigators through prescription given to the consumer to be filled by the licensed pharmacist of his choice. Comparison of these statutory provisions to the denture prescription statute in no way affects our agreement with the Board of Dentistry's interpretation of the statute. Pharmacists and optical retailers are permitted to offer and sell drugs and prescription glasses directly to the public; dental technicians are expressly forbidden by statute to offer or sell dentures or related services "to any person other than a licensed dentist." Ky. Rev. Stat. §§ 313.010(2); 313.020
 
 
 [7]
 We conclude that Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) is entirely dispositive of any suggestion in plaintiffs' brief that the alleged but indirect frustration of their right to free speech is somehow violative of the First Amendment. Plaintiffs do not claim that there has been an express campaign to infringe upon any First Amendment right to commercial free speech. The entire thrust of their argument is that the ban of the consumer's right to choose his own laboratory itself violates the First Amendment right because it thereby makes the plaintiffs' advertising commercially unrewarding. Brief of Appellants at 7. Because the statutory scheme is a valid exercise of Kentucky's police power, a finding of the district court not challenged in this appeal, there is no infringement of the right of commercial free speech under the First Amendment:
 As with other varieties of speech, it follows as well that there may be reasonable restrictions on the time, place, and manner of advertising. See Virginia Pharmacy Board v. Virginia Consumer Council, 425 U.S., at 771 (96 S.Ct. 1817 at 1830). Advertising concerning transactions that are themselves illegal obviously may be suppressed. See Pittsburg Press Co. v. Human Relations Comm'n. 413 U.S. 376, 388 (93 S.Ct. 2553, 37 L.Ed.2d 669) (1973).
 Bates v. State Bar of Arizona, supra, 433 U.S. at 384, 97 S.Ct. at 2709.
 
 
 *
 An excellent recent article by Professors Payton and Powsner explores some of the ways in which professional medical organizations have pursued state regulation for the economic benefit of their members. See Payton and Powsner, Regulation Through the Looking Glass: Hospitals, Blue Cross, and Certificate-of-Need, 79 Mich. L. Rev. 203 (1980)