**AJAX ALUMINUM, INC., a Michigan corporation, Plaintiff,**

v.

**GOODWILL INDUSTRIES OF MUSKEGON COUNTY, a Michigan corporation; Kaufman Industries, a Michigan corporation; Muskegon-Oceana Community Action Program, a political subdivision of the State of Michigan; Allegan Community Action Program, a political subdivision of the State of Michigan; and the State of Michigan, Department of Labor, Bureau of Community Services, Defendants.**

No. G82–31 CA1.

United States District Court, W.D. Michigan, S.D.

May 16, 1983.

David R. Justian, Muskegon, Mich., for plaintiff.

Landman, Luyendyk, Latimer, Clink & Robb by William F. McNally, Muskegon, Mich., for Goodwill Industries.

Marcus, Ruck & Wells, P.C. by Theodore N. Williams, Muskegon, Mich., for Muskegon-Oceana Community Action Program.

Varnum, Riddering, Wierengo & Christenson by Peter Armstrong, Grand Rapids, Mich., for Kaufman Industries.

Frank J. Kelley, Atty. Gen. by Dennis J. Grifka and James D. Mueller, Asst. Attys. Gen., Labor Div., Lansing, Mich., for State of Mich., Dept. of Labor, Bureau of Community Services.

## OPINION RE MOTION TO DISMISS

HILLMAN, District Judge.

In this antitrust action, plaintiff, Ajax Aluminum, Inc., (Ajax) alleges that the State of Michigan, through its Department of Labor, Bureau of Community Services, together with Goodwill Industries and other defendants, entered into a conspiracy to restrain and monopolize interstate commerce in violation of sections 1 and 2 of the Sherman Antitrust Act. 15 U.S.C. § 1, *et seq.* More specifically, plaintiff contends that defendants have conspired to restrain and monopolize commerce in the manufacture, sale and distribution of aluminum storm windows.

Currently before the court is defendant State of Michigan, Department of Labor's (Department of Labor), motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The Department of Labor contends that as a state entity, it is immune from the provisions of the Sherman Act. Additionally, the Department contends that since plaintiff's suit for injunctive and monetary relief is directly against the State, plaintiff's suit against the Department is barred by the Eleventh Amendment.

For the reasons that follow, I find that the Department of Labor, in the instant case, is exempt from suit under sections 1 and 2 of the Sherman Act. Therefore, it is unnecessary to determine whether the instant case against the Department is barred by the Eleventh Amendment.

## I. STATEMENT OF THE CASE

Plaintiff, a Michigan corporation, is engaged in the manufacture and sale of aluminum storm windows. Defendant Goodwill Industries of Muskegon County, Michigan, is a nonprofit, tax-exempt corporation organized under the laws of the State of Michigan. Plaintiff alleges that defendant Goodwill currently manufactures and sells aluminum storm windows in competition with plaintiff.

The instant dispute arose out of the administration of the Low Income Household Home Weatherization Act. M.C.L.A. § 400.1051, *et seq.* Under the Act, the State of Michigan provided for a program to be established in order to insulate the homes of low income families. The Act provided, *inter alia,* provisions for competitive bidding by private and public contractors, provisions establishing criteria for homeowner eligibility, and provisions establishing a review board to hear appeals from contractors who were denied contracts under the program.

Under the Act, the legislature commanded the Bureau of Community Services of the Michigan Department of Labor to establish and administer a weatherization program consistent with the requirements of the Act. M.C.L.A. § 400.1055. Among other duties, the Department of Labor was required to establish quality control standards for workmanship and adequacy of insulation materials. M.C.L.A. § 400.1061.

Plaintiff alleges that in establishing and administering the weatherization program, the Department of Labor encouraged and pressured local community agencies to purchase storm windows from Goodwill Industries. Plaintiff contends that pursuant to that pressure, storm windows were purchased from Goodwill notwithstanding that Goodwill's windows did not comply with mandatory United States Department of Energy Regulations and despite the fact that Goodwill's bid to supply storm windows was higher than plaintiff's.

Plaintiff contends that Goodwill's use of its tax exempt status, its deviated wage system for handicapped workers, and its state funds received for worker rehabilitation have permitted Goodwill to compete unfairly in the market place. Plaintiff asserts that the Department of Labor's conduct in aiding Goodwill's alleged anticompetitive practices involves the Department in a conspiracy to violate the Sherman Act.

## II. DEFENDANT'S SHERMAN ACT EXEMPTION

Defendant Department of Labor contends that as a state entity, the Department is exempt from sections 1 and 2 of the Sherman Act. The Department draws support for this contention from *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker,* the Supreme Court, after reviewing the language and legislative history of the Sherman Act stated:

"We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature... There is no suggestion of a purpose to restrain state action in the Act's legislative history."

*Id.* at 350–351, 63 S.Ct. at 313. Thus, defendant contends *Parker's* "state action exemption"[1] precludes suit against the Department in the instant case.

In opposing defendant's motion, plaintiff contends that the *Parker* doctrine is inapplicable to the instant case. Plaintiff contends that for a party to claim exemption under *Parker,* it is insufficient that the entity being sued is the state. Rather, plaintiff contends that defendant must satisfy a two-fold inquiry, which was established in cases subsequent to *Parker v. Brown:* first, the challenged conduct must be actively supervised by the State; second, that the challenged conduct is the product of a clearly articulated and affirmatively expressed state policy. *See, California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Gambrel v. Kentucky Board of Dentistry,* 689 F.2d 612 (6th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983).

Plaintiff concedes that this suit is brought against the State of Michigan in its sovereign capacity and that the Department of Labor, acting as the State, actively supervised the challenged conduct. Therefore, plaintiff acknowledges that the first prong of the *Midcal Aluminum* test has been satisfied. However, plaintiff alleges that since the Michigan legislature did not express any state policy regarding the purchase of Goodwill's storm windows when it enacted the Low Income Home Weatherization Act, defendant Department of Labor has not satisfied the second prong of the *Midcal Aluminum* test. Therefore, plaintiff contends that the Department of Labor is

---

**1.** Although the Court in *Parker* reached its decision through a pre-exemption analysis, subsequent Courts have construed the *Parker* doctrine in terms of exemption. *See Community Communications Co. v. City of Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1980).

not entitled to antitrust immunity under *Parker v. Brown.*

■ Several courts have questioned the applicability of the two-pronged *Midcal* test to the issue presented in this case. *See Horsemens Benevolent and Protective Ass'n v. Pennsylvania Horse Racing Commission,* 530 F.Supp. 1098 (E.D.Pa.1982) *aff'd,* 688 F.2d 821 (3d Cir.1982); *Feldman v. Gardner,* 661 F.2d 1295 (D.C.Cir.1981) *cert. denied,* —— U.S. ——, 102 S.Ct. 3483, 73 L.Ed.2d 1366; *State of New Mexico v. American Petrofina, Inc.,* 501 F.2d 363 (9th Cir.1974). However, neither the Supreme Court nor the Court of Appeals for the Sixth Circuit has considered the applicability of the *Midcal* inquiry to the precise factual circumstances presented in the instant case. *But see Gambrel, supra* (holding that the two-pronged *Midcal* standard was satisfied so that the Kentucky Board of Dentistry and individual dentists did not violate the Sherman Act in forbidding dentists from providing denture prescriptions directly to consumers). Based on my review of Parker's "state action exemption," I find that the two-prong *Midcal* test is inapplicable to the facts in the instant case. Therefore, following *Feldman, supra,* and *American Petrofina, supra,*[2] I find that a state, acting in its sovereign capacity, cannot be sued for alleged violations of the Sherman Act.

### A. Parker and its Progeny.

In *Parker v. Brown, supra,* the Supreme Court upheld, against an antitrust challenge, the California Agricultural Prorate Act, which authorized state officials to regulate California raisin production. Under a marketing program established pursuant to the Act, the State Director of Agriculture, along with others appointed by the governor, was authorized to restrict raisin output. Under the prorate program, no restriction went into effect unless proposed by private growers and approved by a referendum among them. 317 U.S. at 346–47, 63 S.Ct.

at 311. After the Act was implemented, Parker filed suit against Brown, the State Director of Agriculture, to enjoin enforcement of the marketing program.

In holding that the Sherman Act did not invalidate the challenged marketing program, the *Parker* Court emphasized the legislature's continuing involvement in the challenged conduct and the legislature's stated intent to displace competition with a cartel. 317 U.S. at 350, 63 S.Ct. at 313. Plaintiff in the instant case argues that a state's immunity extends only to those situations where the legislature has specifically authorized or mandated that free competition be displaced by an anticompetitive program. *See New Motor Vehicle Board of California v. Orrin W. Fox Co.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978). Plaintiff alleges that the Department of Labor's anticompetitive conduct was not specifically authorized by the Michigan legislature and therefore not immunized by the state action doctrine of *Parker v. Brown.* I disagree.

After the *Parker* decision, most "state action" litigation under the Sherman Act involved private parties who were regulated by state authorities. *See, e.g., Midcal Aluminum, supra; United States v. South-Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944).

In *Cantor v. Detroit Edison, supra,* the Supreme Court held that a private utility did not enjoy immunity from the antitrust laws despite the fact that the Michigan Public Utility Commission had sanctioned Detroit Edison's practice of supplying light bulbs free of charge to its customers. In reaching its decision, the Supreme Court found no indication that the Michigan legislature or the Public Service Commission had expressed any statewide policy relating to light bulb distribution or had any supervision over the distribution program. 428 U.S. at 584–85, 96 S.Ct. at 3114–15. Consequently, the Court held that Detroit Edison

---

**2.** This court does not adhere to the Ninth Circuit's view announced in *American Petrofina, supra,* that a state's immunity under *Parker v. Brown, supra,* extends to county governmental bodies. *See Community Communications, supra; see also City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (plurality opinion).

did not enjoy "state action" immunity under *Parker v. Brown, supra.*

In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the Court struck down a minimum fee schedule promulgated by a county bar association. The court, in declaring that the challenged conduct was "not state action for Sherman Act purposes," *id.* at 791, 95 S.Ct. at 2015, specifically emphasized that although the Virginia Supreme Court retained ultimate control over attorney discipline, that Court had not authorized the challenged price fixing. *Id.* at 788–91, 95 S.Ct. at 2013–15.

In both *Cantor,· supra,* and in *Goldfarb, supra,* the defendants were private parties. Consequently, it was necessary for the Court to inquire whether the state had authorized or required the challenged conduct to determine whether the anticompetitive conduct was, for Sherman Act purposes, that of the state. Implicit in such an inquiry is that an alleged private party, if authorized by the state, enjoys the same immunity from the antitrust laws as does the state when the state acts in its sovereign capacity. Consequently, where there is no question that the challenged conduct is committed by the state itself, the "legislative authority" prong of the state action doctrine is unnecessary. *Feldman v. Gardner, supra* at 1305; *American Petrofina, supra* at 370.

This conclusion rests upon the basis of *Parker's* "state action" exemption that the reach of the Sherman Act is limited by the federalism principle of limited state sovereignty. *Community Communications Co., supra,* 455 U.S. at 53, 102 S.Ct. at 842. The importance of federalism implications in "state action" analysis was clearly pointed out in *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). In *Bates,* the Court found state action immunity under the Sherman Act for attorney advertising rules promulgated by the Arizona Supreme Court after finding that that court was the ultimate body "wielding the state's power over the practice of law." *Id.* at 360, 97 S.Ct. at 2697.

Equally important, the Court distinguished *Cantor v. Detroit Edison, supra,* by stating:

"We believe, however, that the context in which *Cantor* arose is critical. First, and most obviously, *Cantor* would have been an entirely different case if the claim had been directed against a public official or public agency, rather than against a private party. Here, the appellants' claims are against the State. The Arizona Supreme Court is the real party in interest; it adopted the rules, and it is the ultimate trier of fact and law in the enforcement process."

433 U.S. at 361, 97 S.Ct. at 2697 (citation and footnote omitted).

More recently, the Supreme Court again premised its state action analysis on federalism concerns. In *Community Communications Co., supra,* the Court rejected the City of Boulder's contention that it enjoyed *Parker* immunity on the basis of Colorado's "Home Rule" Amendment. Although the Court inquired into the authorization of Boulder's challenged conduct, the inquiry for "authorization" under *Midcal, supra,* was necessary only because cities are not themselves sovereign and do not receive the same federal deference as do states. *Id.* 455 U.S. at 50–51, 102 S.Ct. at 840. Specifically, the Court stated:

"Our precedents thus reveal that Boulder's moratorium ordinance cannot be exempt from antitrust scrutiny unless it constitutes the action of the State of Colorado itself in its sovereign capacity, *see Parker, or* unless it constitutes municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy, *see City of Lafayette, Orrin W. Fox Co.,* and *Midcal.*"

102 S.Ct. at 841 (emphasis added).

The reasoning in *Bates, supra,* and in *Community Communications Co.,* are critical to the resolution of the instant motion. In *Bates,* the Supreme Court made clear that the focus of "state action" analysis is on the identity of the party claiming antitrust exemption. In *Community Communications Co.,* the Court held that state action exemption, under *Parker, supra,* will be

found where *either* the party claiming exemption is a sovereign entity *or* where a non-sovereign entity is acting pursuant to a specifically authorized state policy. *Id.* 102 S.Ct. at 841. The reasoning of these two cases compels this court to hold that where the identity of a party claiming antitrust immunity under *Parker* is the State, the "legislative authorization" prong of the *Midcal* test need not be satisfied.

This court's reading of applicable precedent is entirely consistent with the Supreme Court's reliance in *Parker, supra,* upon legislative authorization for California's prorate program. After stating that the Sherman Act was inapplicable to states, the Court questioned whether or not the plan in issue was authorized by the legislature. 317 U.S. at 352–359, 63 S.Ct. at 314–17. However, this analysis was necessary because the program in issue was formulated by and approved by private individuals. Therefore, the authorization inquiry was necessary to determine whether or not the plan was merely a private agreement masquerading as state action. 317 U.S. at 351, 63 S.Ct. at 313.

It is important to note that the *Parker* Court questioned the authorization for the prorate program despite the fact that the defendant was a state official. However, as the Court of Appeals for the Ninth Circuit has pointed out:

"It is true that the defendant was clearly a state officer in *Parker.* But the plaintiff was not asserting that the Director of Agriculture was liable: he was arguing that the Director could not enforce his regulations requiring admittedly private parties to act anti-competitively. It is far different to conclude that a state official, not acting under the mandate of a legislative regulatory scheme, can be enjoined from forcing private parties to act anti-competitively than to conclude that the official or the state for whom he acts is itself liable for a violation of the Sherman Act."

*American Petrofina, supra,* at 370, n. 15.

In the instant case, there is no question that the challenged conduct was the act of the sovereign State of Michigan. In enacting the Low Income Weatherization Act, the Michigan Legislature directed the Department of Labor to not only administer a weatherization program, but also establish a program. M.C.L.A. § 400.1055. Consequently, the Legislature delegated complete authority to the Department under the Weatherization Act. As noted earlier, plaintiff has conceded this point. As plaintiff's brief in the instant motion has pointed out:

"The Plaintiff has found a way to name the State of Michigan as a Defendant in this cause of action and that way is the Sherman Anti-Trust Act. The State of Michigan has not read the Complaint of the Plaintiff [sic] if it believes it is being sued in this Honorable Court because it has violated the state Weatherization Act. The State of Michigan is being sued, and I wish to make this clear to the Defendant State, for violation of the Sherman Anti-Trust Act."

Plaintiff's Brief, at 9.

Since there is no question that the challenged conduct in the instant action constituted actions of the State of Michigan, I find it unnecessary for the defendant Department of Labor to establish that the challenged conduct was specifically authorized by Michigan's Low Income Weatherization Act. Consequently, I find that the Department of Labor, in this case, is exempt from suit under the Sherman Act. Therefore, the Department's motion to dismiss shall be granted.

## III. CONCLUSION

Upon review of the case law construing the state action exemption under *Parker v. Brown,* I find that where alleged anticompetitive conduct constitutes the actions of the state, in its sovereign capacity, it is unnecessary to determine whether the challenged conduct was authorized by the state legislature. Consequently, I find that defendant Department of Labor's conduct need not satisfy both prongs of the *Midcal Aluminum* inquiry. Therefore, under the facts of this case, I find that the Michigan

Department of Labor is exempt from suit under sections 1 and 2 of the Sherman Act. Accordingly, the action with respect to the Michigan Department of Labor is dismissed.